Complainant seeks to set aside a certain mortgage on the ground that it was executed and delivered in fraud.
Annie Rothman and Bessie Stavitsky are mother and daughter. After June 28th, 1928, the date of the death of Annie's husband and Bessie's father, Bessie conducted for her mother a general farmers' supply business, devoting all of her time and energies thereto, and continued so to do until May of 1938, when she retired from the business entirely, she having married on January 9th, 1938.
Mrs. Rothman was indebted to the complainant bank as far back as 1931 and from thence on Mrs. Rothman enjoyed a liberal discount credit with the bank. On January 1st, 1938, she was indebted to the complainant bank in the sum of $8,000. A note for $3,000 was due on January 14th, *Page 229 
1938, and another for $5,000 was due on January 21st, 1938. Both of these notes were renewals of long existing note obligations.
For some considerable time prior to December 14th, 1938, the bank insisted that Mrs. Rothman secure her indebtedness by a mortgage on her properties, and on that date Mrs. Rothman and her daughter Bessie went to Vineland for the purpose of the execution and delivery of the requested mortgage. The attorney for the bank insisted that Mrs. Rothman pay for the search and the attorney's fee, which Bessie, for her mother, refused to do, with the result that the mortgage was not executed. Upon leaving the office of the attorney for the bank, Mrs. Rothman and her daughter and other members of her family went to the office of their attorney and he prepared a mortgage in favor of Bessie in the sum of $18,200, payable within five years, with interest at 6%. The bank was unaware of this transaction until some time in June of 1939 and in the meantime renewed Mrs. Rothman's note indebtedness from month to month. Upon discovery of the execution and record of Bessie's mortgage, the bank entered suit against Mrs. Rothman and obtained a judgment on June 29th, 1939, for $8,971.50 with costs. A levy was made thereunder but nothing has been realized thereon. The fact is that no sale has been made thereunder because the lands levied on are covered by Bessie's mortgage.
The present bill was filed in July of 1939 and at the final hearing the solicitor for complainant announced that he sought a decree solely on the ground that the mortgage to Bessie was executed with actual intent to defraud complainant and is void under N.J.S.A. 25:2-13.
Does the evidence support a finding of actual fraud?
As heretofore noted, the bank, I think realizing that the business was not continuing as successfully as it theretofore had, had been, for some time prior to December of 1938, insisting on mortgage security, and in addition, it had asked for a financial statement prior to January 1st, 1938. Bessie, during all of the time in which she managed her mother's business, did all of the banking and attended to all details of the business, doing the banking under a written power of *Page 230 
attorney giving her full authority so to do. All of the bank's dealings were with Bessie and not with the mother, who is illiterate and signs her name by making a cross. On or about January 1st, 1938, Bessie gave to the bank a "confidential statement" in writing in which she did not set out as a liability against the assets of the business any moneys owing by her mother to her, although at that time she now says there was due her as wages the sum of $35 per week for each week from June 28th, 1928, less $5 per week from that date to sometime in 1934, less other small withdrawals on account from 1934 to January, 1938.
Bessie unquestionably misrepresented her mother's financial condition to the bank in the written statement aforesaid if, in fact, there was due her the moneys she now claims to have been due, and I cannot assume that she did so inadvertently and without intent so to do, and I must also conclude that the bank, on the strength of that misrepresentation, continued the monthly renewals of Mrs. Rothman's note indebtedness until the misrepresentation was discovered in June of 1938, and that it continued so to do to its damage, in that while so continuing the notes, Bessie secured a preference through her mortgage.
Bessie endeavored to convince the court that the statement aforesaid was never considered by her as complete, as she prepared it under stress of business activities and pressure of other creditors, as well as her preparation for her approaching marriage. She asserts her statement shows she did not intend it as final and says this is evidenced by the fact that the figures are not totaled and that she did not include therein her mother's note indebtedness to the bank. She also says she does not even know how the statement got into the possession of the bank, intimating that she did not intend them to have it until it was fully completed. In all of this she does not convince. She made the statement and delivered it or caused it to be delivered to the bank and is responsible for it, and I conclude that she did not overlook any just claim against her mother which she at that time considered was an outstanding obligation which she was entitled to press as against the assets of her mother in conjunction with or in *Page 231 
preference over other creditors. She so testified, in effect. She said that she never looked upon the indebtedness in "that light,"i.e., in the light of a claim to be urged and insisted upon, but one that she expected would some day be paid, but she said that when her mother was advised by her not to sign the mortgage to the bank she, Bessie, knew that the bank would take action and she wanted to be ahead of the bank, and the fact is that she was in such a hurry to do so that on that very day when her mortgage was executed she was unable to give the exact amount of her claim, with the result that the consideration of the mortgage was fixed at $18,200, with the alleged agreement between Bessie and her mother that they would agree on the correct amount thereafter, now asserting that the correct amount is $11,414.16.
It seems apparent that on this evidence we may not conclude that Bessie was in the position of a creditor seeking a mere preference and honestly doing that which she had a right to do, but that she was in the position of dealing with the bank over a period of years and furnishing not only the 1938 statement, but preceding ones, and at all times concealing any claim she had against her mother, so that the bank was misled thereby and was finally left "holding the bag" as it were, Bessie holding a secured claim of such amount as to defeat collection of the bank's judgment.
It is true that Bessie had a written agreement dated September 21st, 1929, under which the mother agreed to pay her $35 per week for her services, and while I am satisfied that Bessie never contended that her agreement as to wages was to be considered as a debt as between other creditors and herself, and that she never thought of urging it as such; if she did so consider it, it was her duty to disclose it to the bank, and she could not remain silent in that regard during the time when the bank was pressing its demands and when it was her duty to speak; and not having spoken, she may not be advantaged by a prior claim to that of the bank.
It is inconceivable that the bank would have further extended credit to Mrs. Rothman had Bessie, in the January 1st, 1938, statement, added $18,000 to the listed liabilities. *Page 232 
It being evident that Bessie at all times knew of the financial condition of her mother's business and of her indebtedness to the bank and others, and that the mother acted in all things on the advice of Bessie, we must come to the conclusion that Bessie and her mother acted in concert when the mortgage was executed, and that Bessie was not in the position of a holder of a past due indebtedness which she was honestly seeking to have preferred, but rather engaged with her mother in an attempt to hinder, delay and defraud the bank.
It seems to me that the factual findings herein sustain the decree to be entered herein, and that citation of the many cases supporting the decree under the facts is unnecessary.
The decree will be that the mortgage be set aside in so far as it pretends to be a lien on the premises therein described in preference to the amount due on the judgment held by the bank, and that the mortgage be subordinated to the lien of the bank's judgment, and that the lands therein described be decreed to be subject to the bank's judgment first, and secondly as a lien in favor of Bessie as against Mrs. Rothman.